UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BULLETS2BANDAGES, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>CALIBER CORPORATION, an Illinois corporation,<br><br>    Defendant. | Case No. 3:18-cv-00669-GPC-KSC<br><br>**ORDER DENYING THIRD PARTY DEFENDANTS' MOTION TO DISMISS**<br><br>**[Dkt. No. 18.]** |
| CALIBER CORPORATION, an Illinois Corporation,<br><br>    Counterclaim-Plaintiff,<br><br>  v.<br><br>BULLETS2BANDAGES, LLC, a California limited liability company,<br><br>    Counterclaim-Defendant, | |
| CALIBER CORPORATION, an Illinois Corporation,<br><br>    Third-Party Plaintiff,<br><br>  v.<br><br>LUCKY SHOT USA LLC, a Florida Limited Liability Company; and 2 MONKEY TRADING, LLC, a Florida Limited Liability Company,<br><br>    Third-Party Defendants. | |

1

Before the Court is Third Party Defendants Lucky Shot USA LLC ("Lucky Shot") and 2 Monkey Trading LLC's ("2 Monkey") motion to dismiss the Third Party Complaint ("TPC") under the first-to-file rule and for lack of personal jurisdiction. (Dkt. No. 18.) On July 13, 2018, Third Party Plaintiff Caliber Corporation ("Caliber") filed an opposition. (Dkt. No. 25.) On July 20, 2018, Third Party Defendants filed a reply. (Dkt. No. 26.) Based on the reasoning below, the Court DENIES Third Party Defendants' motion to dismiss on both grounds.

## Background

Plaintiff Bullets2Bandages, LLC ("B2B") and Caliber, in the underlying Complaint, both manufacture and sell bullet-shaped bottle openers. (Dkt. No. 5 at 9[1]; Case No. 13cv3134-CAB(BLM), Dkt. No. 1, Compl. ¶ 11.) In 2013, in case no. 13cv3134-CAB(BLM), B2B filed a complaint against Caliber for trademark infringement of B2B's U.S. Trademark Registration No. 4,364,453 for the mark CALIBER. (Case No. 13cv3134-CAB(BLM), Dkt. No. 1, Compl.) In turn, Caliber filed a counterclaim against B2B for Caliber's Trademark Application No. 85/588,703 for its Bullet Design mark. (Id., Dkt. No. 15.) Application No. 85/588,703 became U.S. Trademark Registration No. 4,630,557 on November 7, 2014. (Dkt. No. 5 at 9.)

On June 9, 2014, B2B and Caliber entered into a settlement agreement in Case No. 13cv3134-CAB(BLM). (Dkt. No. 1 Compl. ¶ 9.) As part of the settlement agreement, B2B assigned to Caliber all rights to the CALIBER mark and agreed to not use the phrase "the ORIGINAL"[2] in relation with its sale of bullet-shaped bottle openers.[3] (Dkt. No. 5, Counterclaim/TPC ¶ 23.) On June 9, 2014, B2B's U.S. Trademark Registration No. 4,364,453 was assigned to Caliber in exchange for good and valuable consideration. (Id. ¶ 18.) In exchange, Caliber granted B2B a worldwide,

---

[1] Page numbers are based on the CM/ECF pagination.
[2] Caiber also owns trademark Registration No. 4,930,487 for the mark, ORIGINAL .50 CALIBER BOTTLE OPENER. (Dkt. No. 5, Counterclaim/TPC ¶ 19.)
[3] On January 16, 2014, Caliber filed a petition for cancellation of B2B's CALIBER mark. (Dkt. No. 5, Counterclaim/TPC ¶ 22.)

non-exclusive license to both the CALIBER mark and the Bullet Trade Dress." (Id. ¶ 23.)

The underlying complaint alleges that B2B, relying on the settlement agreement, manufactured products that it then sells to wholesalers, such as 2 Monkey (a/k/a Lucky Shot) who sells the products directly to consumers. (Dkt. No. 1, Compl. ¶ 11.) 2 Monkey sells B2B's products through Amazon and Etsy. (Id.) B2B learned that someone complained that 2 Monkey's products were infringing. (Id. ¶ 12.) Due to the complaints, Amazon and Etsy removed 2 Monkey's listings from their websites, barring it from engaging in any sales of B2B's products. (Id.)

B2B suspected Caliber complained to Amazon and Etsy and when it contacted Caliber, it was slow to respond despite the substantial financial damage to B2B for 2 Monkey's inability to sell its products. (Id. ¶¶ 14-16.) Then Caliber told B2B that it was disappointed that B2B had signed an agreement with 2 Monkey. (Id. ¶ 17.) Instead of raising an issue concerning the Settlement Agreement, it asked B2B to repudiate its agreement with 2 Monkey so that B2B and Caliber could work together to make 2 Monkey pay a higher rate. (Id.) Caliber also threatened that it would begin licensing the CALIBER Mark and Bullet Trade Dress to anyone so that the market would be flooded ultimately taking sales away from B2B and 2 Monkey. (Id. ¶ 18.)

Consequently, on April 3, 2018, B2B filed the underlying complaint against Caliber for breach of contract, interference with existing contractual relations, interference with prospective economic advantage and unfair competition under California Business & Professions Code section 17200 *et seq.* (Dkt. No. 1, Compl.)

On April 27, 2018, Defendant Caliber filed its Answer and a Counterclaim against B2B for breach of contract, interference with prospective economic advantage and negligent misrepresentation, unfair competition, two counts of federal unfair competition pursuant to 15 U.S.C. § 1125(a) and two counts of trademark infringement of U.S. Registration No. 4,930,487 (THE ORIGINAL .50 CALIBER BOTTLE

3

OPENER) and the U.S. Registration No. 4,364,453[4] (CALIBER) pursuant to 15 U.S.C. § 1114. (Dkt. No. 5.) Caliber also filed a Third Party Complaint against Third Party Defendants Lucky Shot and 2 Monkey. (Id.) In the TPC, Caliber alleges eight causes of action of common law unfair competition, three counts of trademark infringement of U.S. Registration No. 4,630,557 (Bullet Design mark), U.S. Registration No. 4,364,453 (CALIBER) and U.S. Registration No. 4,930,487 (ORIGINAL .50 CALIBER BOTTLE OPENER) pursuant to 15 U.S.C. § 1114; three counts of federal unfair competition pursuant to 14 U.S.C. § 1125(a), and counterfeiting. (Dkt. No. 5 at 22-29.)

Two weeks prior to the filing of the complaint in this case, on March 16, 2018, Lucky Shot filed a complaint for declaratory judgment against Caliber in the U.S. District Court for the Middle District of Florida. (Dkt. No. 18-3, Ex. A, Florida Compl.) The Florida complaint seeks a declaration of non-infringement of Defendant's claimed rights in a federally registered trademark, Registration No. 4,630,557 (Bullet Design mark), under 15 U.S.C. § 1114; a declaration that Lucky Shot does not unfairly compete with Defendant under 15 U.S.C. § 1125(a); declaration that the trademark Registration No. 4,630,557 is invalid; cancellation of the trademark under 15 U.S.C. § 1064; interference with a business relationship; deceptive and unfair trade practices; unfair competition; and defamation per se. (Id. ¶ 1.) On April 30, 2018, Defendant filed a motion to dismiss. (Case No. 18cv398-ACC-DCI, Middle District of Florida, Dkt. No. 10.) There has been no ruling on the motion but a case management and scheduling order was filed on May 30, 2018. (Id., Dkt. No. 24.)

////

////

////

---

[4] While the eighth counterclaim alleges federal trademark infringement for the CALIBER Mark, it lists U.S. Registration No. 4,930,487. (Dkt. No. 5, Counterclaim/TPC ¶ 117.) However, the CALIBER mark is U.S. Trademark Registration No. 4,364,453. It appears that this may be an oversight by Caliber.

4

# Discussion

## A. First to File

Third Party Defendants argue that the TPC should be dismissed based on the "first-to-file" rule as the same issues are being litigated by the same parties in the U.S. District Court for the Middle District of Florida in Lucky Shot USA, LLC v. Caliber Corp., Case No. 6:18cv398-ACC-DCI. In response, Caliber asserts the first-to-file rule does not apply in this case as the two cases are distinct in parties and issues.

The first-to-file rule is a "recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982) (citing Church of Scientology of Cal. v. U.S. Dep't of Army, 611 F.2d 738, 749 (9th Cir. 1979)). It was developed to "serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly." Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625 (9th Cir. 1991) (quoting Church of Scientology, 611 F.2d at 750). The first-to-file rule "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." Id. at 623. In determining the applicability of the first-to-file rule, courts look to three factors: (1) the chronology of the lawsuits, (2) the similarity of the parties, and (3) the similarity of the issues. See id. at 625.

The "rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Pacesetter Sys., Inc., 678 F.2d at 95. Exceptions to the first-to-file rule include where the filing of the first suit evidences bad faith, anticipatory suits, and forum shopping. Alltrade, 946 F.2d at 628. Moreover, a court may, in its discretion, decline to apply the first-to-file rule in the interests of equity as well as a demonstration of prejudice. Adoma v. Univ. of Phoenix, Inc., 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010); Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994). When applying the first-to-file rule,

courts should be driven to maximize "economy, consistency, and comity." <u>Cadle Co. v. Whataburger of Alice, Inc.</u>, 174 F.3d 599, 604 (5th Cir. 1999).

### 1. Chronology

The parties do not dispute the chronology that the Florida case was filed before the Third Party Complaint.

### 2. Similarities of the Parties

In their moving papers, Third Party Defendants do not address whether the parties are similar in both actions, but in their reply argue that the parties are substantially the same as Lucky Shot and 2 Monkey are commonly owned and related organizations. Caliber argues that the parties are not sufficiently similar because 2 Monkey and B2B are not parties to the case in Florida.

The Third Party Complaint in this district involves Caliber, as the Third Party Plaintiff and Lucky Shot and 2 Monkey as the Third Party Defendants while the Florida complaint involves only Lucky Shot as the Plaintiff and Caliber as the Defendant.

The Ninth Circuit has recognized that the "first-to-file rule does not require the exact identity of the parties" but requires "only substantial similarity of parties." <u>Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.</u>, 787 F.3d 1237, 1240 (9th Cir. 2015) (omission of one defendant does not defeat application of the first-to-file rule).

Here, Lucky Shot and 2 Monkey are commonly owned and are related organizations. (Dkt. No. 18-2, Ingalls Decl. ¶ 7.) 2 Monkey manages the manufacturing and wholesale of consumer products while Lucky Shot manages sales directly to consumers of consumer products managed by 2 Monkey. (<u>Id.</u>) Because Lucky Shot and 2 Monkey are commonly owned, omitting 2 Monkey from the Florida action does not defeat application of the first-to-file rule. The Court concludes that the parties in both cases are substantially similar.

/ / / /

/ / / /

6

### 3. Similarities of the Issues

Third Party Defendants argue that the issues in both cases are substantially the same. Caliber responds that the issues are different as they involve different trademarks. In reply, Third Party Defendants do not persuasively address arguments raised by Caliber that the cases are not substantially similar.

The Ninth Circuit has held that the issues in both cases do not need to be identical but only "substantially similar." Kohn Law Group, Inc. 787 F.3d at 1240-41. The Ninth Circuit looks at whether there is "substantial overlap" between the two cases. Id. at 1241. In patent cases, district courts have considered whether there is "substantial overlap in the subject matters of the two cases" not whether they involve the same patents. See Fairchild Semiconductor Corp. v. Power Integrations, Inc., Civil Action No. 06cv151, 2007 WL 712289, at *1 (E.D. Tex. Mar. 6, 2007) (transferring second-filed patent infringement action to district where first-filed action is pending between same parties on various patents related to mobile video systems because of the "substantial overlap in the subject matter of the two suits."); TMI Prods., Inc. v. Audiovox Corp., Case No. CV 09-1437-JFW (JCx), 2009 WL 10675633, at *3 (C.D. Cal. Apr. 29, 2009) (transferring case to first filed case because although different patents were involved, they involved the same subject matter). In TMI Prods., the defendant filed a suit in Eastern District of New York alleging patent infringement on their patents while the plaintiff filed a later case in Central District of California alleging patent infringement on its patents. 2009 WL 10675633, at *1. While both cases involved different patents owned by the plaintiff and defendant, they concerned the same subject matter of a headrest-mounted rear-seat entertainment systems. Id. at *2. The court explained there is substantial overlap in evidentiary and discovery issues because both sets of patents share the prior art of nine patents. Id. The court exercised its discretion and transferred the action to Eastern District of New York. Id. at *3.

7

Here, the Florida Action was filed by Lucky Shot against Caliber seeking declaratory judgment and injunctive relief concerning federally registered trademark with Registration No. 4,630,557, the Bullet Trade Dress. (Dkt. No. 18-3, Ex. A, Florida Compl.) In this case, the Third Party Complaint alleges causes of action relating to trademark infringement of U.S. Registration Nos. 4,630,557 (Bullet Design mark), 4,930,487 (ORIGINAL .50 CALIBER BOTTLE OPENER), and 4,930,453 (CALIBER). (Dkt. No. 5 at 22-29.) Here, while the subject matter of the trademarks involve bullet-shaped bottle openers and both involve one similar design mark, Registration No. 4,630,557, the Third Party Complaint involves two additional trademarks, Registration Nos. 4,930,487 and 4,930,453 not raised in the Florida case. An analysis of a trade dress infringement in the Florida complaint will be different than an analysis of trademark infringement in the Third Party Complaint. See Moroccanoil, Inc. v. Zotos Int'l, Inc., 230 F. Supp. 3d 1161, 1171 (C.D. Cal. 2017) (quoting Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993) ("In contrast to a trademark, 'trade dress' refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture or graphics."). Therefore, a resolution of the claims in the Florida action will not extinguish the claims in the TPC in this case. Furthermore, besides a conclusory argument that the cases are substantially similar, Third Party Defendants do not provide persuasive legal authority that the case are substantially similar. Lastly, Third Party Defendants do not address and the Court questions the effect of the underlying complaint in this case by B2B against Caliber on the Florida case if the TPC were dismissed. Discovery and facts concerning issues in the underlying complaint would inevitably be brought into the Florida action in some manner. Therefore, the purpose of efficiency behind the first-to-file rule would be defeated. While there is some overlap in both cases, the Court cannot conclude there is substantial overlap with respect to legal, evidentiary and discovery issues.

Accordingly, the Court DENIES Third Party Defendants' motion to dismiss based on the first-to-file rule.[5]

## B. Personal Jurisdiction over Third Party Defendants

Third Party Defendants also move to dismiss arguing the Court lacks personal jurisdiction over them. Caliber opposes.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." In re Western States Wholesale Natural Gas Antitrust Litig. v. Oneok, Inc., 715 F.3d 716, 741 (9th Cir. 2013). If the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Bryton Purcell LLP v. Recordon & Recordon, 575 F.3d 981, 985 (9th Cir. 2009). On a prima facie showing, the court resolves all contested facts in favor of the non-moving party. In re Western States, 715 F.3d at 741; AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (if conflicted facts are contained in the parties' affidavits, the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case of personal jurisdiction has been established.) At the same time, however, the plaintiff cannot establish jurisdiction by alleging bare jurisdictionally-triggering facts without providing some evidence of their existence. Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted). "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are

---

[5] Based on the Court's ruling, it need not address Caliber's additional arguments that the first to file rule does not apply because the Florida complaint was an anticipatory suit and for other equitable consideration.

9

the same." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting Mavrix Photo, Inc., 647 F.3d at 1223).

As such, the Court need only consider the requirements of due process. Due process requires that nonresident defendants have "minimum contact" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Personal jurisdiction can be either "general" or "specific." See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

## C. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). As to corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (citation omitted). Outside of these paradigm bases, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so substantial and of such a nature as to render the corporation at home in that State." Id. at 139 n.19. Exceptional circumstances, as noted in Daimler, do not exist merely whenever "a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is only whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" Id. at 139 (quoting Goodyear, 564 U.S. at 919.) The Supreme Court in Daimler AG cited to its decision in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952) to exemplify what constitutes "exceptional circumstances." Id. There, the Court held that an Ohio court could exert general jurisdiction over an out-of-state corporation located in the Philippines, because Ohio was the corporations' principal,

10

albeit temporary, place of business during the war when the Japanese occupied the Philippines. Id. at 447-48.

The Ninth Circuit has noted the "demanding nature of the standard for general personal jurisdiction over a corporation." Martinez, 764 F.3d at 1070. The Daimler court rejected the argument that a court has general jurisdiction over a corporation when it "engages in a substantial, continuous, and systematic course of business" in a state. 571 U.S. at 138; see Kipp v. Ski Enter. Corp. of Wisconsin, 783 F.3d 695, 698 (7th Cir. 2015) ("Daimler raised the bar for general jurisdiction and "require[s] more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice."); Amiri v. DynCorp Int'l, Inc., Case No. 14cv3333 SC, 2015 WL 166910, at *3 (N.D. Cal. Jan. 13, 2015) (noting that "in the overwhelming majority of cases there will be no occasion to explore whether a Perkins-type exception might apply")

Here Lucky Shot and 2 Monkey are Florida limited liability corporations with their principal place of business in Orlando, Florida. (Dkt. No. 18-2, Ingalls Decl. ¶ 5.) Third Party Defendants argue that they do not have any "substantial" or "continuous and systematic" activities in California. In response, Caliber argues and presents facts that Third Party Defendants' activities in California are substantial and continuous and systemic by looking at the economic reality of their activities. Both parties' argument relying on substantial or continuous and systematic activities has been rejected by the U.S. Supreme Court. See Daimler AG, 571 U.S. at 138.

Neither party has addressed the Supreme Court's ruling in Daimler AG that general jurisdiction for a corporation is the place of incorporation and principal place of business. See id. at 137. Here, Third Party Defendants are "at home" in Florida, and Caliber has not demonstrated that this case is an exceptional one to warrant invoking general jurisdiction over Third Party Defendants. See id. at 139 n.19. The Court lacks general personal jurisdiction over Third Party Defendants.

11

**D. Specific Personal Jurisdiction**

Third Party Defendants contend that this Court lacks specific jurisdiction over them because the Third Party Complaint only makes generalized claims of jurisdiction and does not assert that Third Party Defendants purposefully directed their activities to California. In response, Third Party Plaintiff contends that this Court may assert specific personal jurisdiction because Third Party Defendants purposely directed conduct at California.

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 n. 8. The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation." Walden v. Riore, 134 S. Ct. 1115, 1121 (2014). Specific jurisdiction is limited to ruling on "issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A., 564 U.S. at 919 (citation omitted).

The Ninth Circuit conducts a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction,

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).

12

## 1. Purposeful Direction

On the first factor, the Ninth Circuit applies the three part purposeful direction test enunciated in Calder v. Jones[6] for trademark infringement actions. See Nissan Motor Co. v. Nissan Computer Corp., 246 F.3d 675, 675 (9th Cir. 2000); see also Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015) (Ninth Circuit requires a showing of purposeful direction to trademark infringement analysis). Under the three-part Calder "effects" test to evaluate purposeful direction, Plaintiff must establish that the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing Calder v. Jones, 465 U.S. 783 (1984)). "In Calder v. Jones, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006).

An intentional act for purposes of the effects test is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Wash. Shoe Co. v. A–Z Sporting Goods, Inc., 704 F.3d 668, 674 (9th Cir. 2012); Schwarzenegger, 374 F.3d at 806 (an intentional act "refers" to an intent to perform an actual, physical act in the real world.").

Third Party Defendants summarily argue that Caliber has not sufficiently alleged they committed an intentional act expressly aimed at California which caused harm that they knew would be suffered in California. Also, they argue they have no presence in California and they did not purposefully direct their marketing or sale of products to California. Caliber responds that Third Party Defendants committed an intentional act by manufacturing, selling and shipping bullet-shaped bottle openers incorporating the Bullet Trade Dress. The Court agrees with Third Party Plaintiff that Third Party

---
[6] 465 U.S. 783 (1984).

13

Case No. 3:18-cv-00669-GPC-KSC

Defendants' alleged act of manufacturing and selling bullet-shaped bottle openers that incorporates Caliber's Bullet Trade Dress satisfies the intentional act prong.

Caliber next argues that Third Party Defendants' act of selling the bottle openers was expressly aimed at California by operating a website and, in fact, 2 Monkey admits it distributes bullet-shaped bottle openers to retailers in California who then sells the openers to consumers at physical locations. Lucky Shot also markets and sells directly to customers in California.

A passive website, alone, is not sufficient to confer personal jurisdiction. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1157 (9th Cir. 2006) (passive website without something more "to encourage residents of the forum state" is not enough to confer personal jurisdiction); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (no personal jurisdiction where the defendant "conducted no commercial activity over the Internet in Arizona. All that it did was post an essentially passive home page on the Web").

Here, Third Party Defendants acknowledge Lucky Shot "markets and sells products to consumers through internet marketplaces such as Amazon and Etsy. Some of Lucky Shot's customers are in California." (Dkt. No. 18-2, Ingalls Decl. ¶ 9.) In addition, 2 Monkey distributes consumer products to retailers that are in California. (Id. ¶ 8.) Therefore, Third Party Defendants' act of selling bullet-shaped bottle openers that allegedly infringed Caliber's trademarks was expressly aimed at California.

Lastly, a plaintiff must demonstrate that the defendants caused harm they knew was likely to be suffered in California. See Dole Food Co., 303 F.3d at 1111. "The economic loss caused by the intentional infringement of a plaintiff's [trademark] is foreseeable." Washington Shoe, 704 F.3d at 679. "It is foreseeable that the loss will be inflicted both in the forum where the infringement took place . . . and where the [rights] holder has its principal place of business." Id.; Mavrix Photo, 647 F.3d at 1231 ("The economic loss caused by the intentional infringement of a plaintiff's copyright

14

is foreseeable."). "[J]urisdictionally sufficient harm may be suffered in multiple forums." Mavrix Photo, 647 F.3d at 1231 (economic loss was foreseeable and that the loss to Mavrix would be inflicted not only in Florida, the plaintiff's principal place of business but also in California where Californians bought the publications).

Here, Caliber claims it was foreseeable that Third Party Defendants knew harm would be suffered in California by agreeing to an indemnity provision contained in the manufacturing agreement with B2B. 2 Monkey agreed to indemnify B2B for any of its losses and damages arising from 2 Monkey's business practices. (Dkt. No. 25-3, Caliber's Ex. 2 at 2-3.) Therefore, it was foreseeable that 2 Monkey's business practices are the cause of any losses to B2B. Caliber focuses on harm suffered by B2B in California and fails to address harm that it suffered as a result of Third Party Defendants' alleged infringement.

Notwithstanding Caliber's argument, the Court notes that Third Party Defendants knew harm would likely be suffered in California where 2 Monkey's allegedly infringed on Caliber's trademarks by selling infringing products to California consumers. Therefore, any potential loss of sales due to Third Party Defendants' alleged infringement harms Caliber.

In sum, Caliber has demonstrated that Third Party Defendants purposefully directed their activities at California.

### 2. Arising Out Of

As to the second factor, the Court considers whether Caliber's claims arise out of 2 Monkey and Lucky Shot's forum-related activities. See Schwarzenegger, 374 F.3d at 802. The Ninth Circuit applies the "but for" test to determine the "arising out of" requirement. Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 761 (9th Cir. 1990) (internal citation omitted). A "plaintiff must show that 'but for' the defendant's forum-related conduct, the injury would not have occurred." Craigslist, Inc. v.

15

Naturemarket, Inc., 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) (citing Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001)).

Caliber argues that "but for" Third Party Defendants' acts of soliciting, negotiating, executing and performing a contract with B2B executed in California, it would either be receiving royalties, would have a claim for infringement or would be absorbing those sales itself. If Third Party Defendants did not enter into a contract with B2B, it would have no claim against them. Third Party Defendants argue that Caliber improperly relies on the manufacturing agreement between B2B and 2 Monkey, and the settlement agreement between B2B and Caliber to support personal jurisdiction. They argue that because Caliber is not a party to these agreements or a third party beneficiary to either agreement, it cannot use these agreements for purposes of personal jurisdiction. Caliber responds that the two California contracts are key to several issues including that all the accused products were allegedly manufactured under the Manufacturing Agreement and were under the control of B2B.

As an initial matter, the Court disagrees with Third Party Defendants' argument that in order invoke facts relating to the manufacturing agreement to establish personal jurisdiction, Caliber must be a party or third party beneficiary to the contract. Caliber is not seeking to enforce or recover under the agreement; therefore, Third Party Defendants' argument is without merit. The Court looks at whether Caliber's claims arise out of Third Party Defendant's forum-related activities. As discussed below, the manufacturing agreement as well as the settlement agreement, which are both to be governed by California law, are the basis of Third Party Defendants' alleged infringing activities.

According to the TPC, since June 9, 2014, when the Settlement Agreement was executed, and the present, Caliber manufactured large caliber bullet-shaped bottle openers for third parties, including 2 Monkey. (Dkt. No. 5, Counterclaim/TPC ¶ 36.) Around April 7, 2017, 2 Monkey stopped purchasing product from Caliber and

16

expressed a desire to obtain a license for sales of products bearing the Bullet Trade Dress. (Id. ¶ 38.) 2 Monkey began to independently manufacture and sell bullet-shaped bottle openers for its own benefit and for the benefit of Lucky Shot. (Id. ¶ 39.) 2 Monkey realized it could not manufacture or sell the product without a valid license to the Bullet Trade Dress and began negotiating with Caliber. (Id. ¶ 41.) The two parties exchanged several proposals and counter-proposals. (Id. ¶ 42.) On January 25, 2018, Caliber believed that it had an agreement with 2 Monkey. (Id. ¶ 43.) But 2 Monkey delayed execution of the licensing agreement and on February 23, 2018, it told Caliber that it would purchase the product from B2B instead of Caliber. (Id. ¶ 45.) As a result of the failure to enter into a license agreement, 2 Monkey's manufacturing of the bullet-shaped bottle openers were unlicensed, unauthorized and were counterfeit. (Id. ¶ 46.) On February 23, 2018, 2 Monkey and B2B entered into a "Manufacturing Agreement." (Id. ¶ 47.) According to Caliber, the settlement agreement between it and B2B did not allow B2B to transfer rights to the Bullet Trade Dress or CALIBER mark to 2 Monkey or Lucky Shot and B2B did not inform Caliber of its agreement with 2 Monkey. (Id. ¶¶ 69, 73.) Third Party Defendants broke off negotiations with Caliber in order to contract with B2B in order to circumvent Caliber's trademark incorrectly assuming they could sub-license the trademark with B2B. In the TPC, Caliber alleges eight causes of action of common law unfair competition, three counts of trademark infringement of Registration No. 4,630,557 (Bullet Design mark), Registration No. 4,364,453 (CALIBER) and Registration No. 4,930,487 (ORIGINAL .50 CALIBER BOTTLE OPENER) pursuant to 15 U.S.C. § 1114; three counts of federal unfair competition pursuant to 14 U.S.C. § 1125(a), and counterfeiting. (Dkt. No. 5 at 22-29.) All causes of action hinge on Third Party Defendants' relationship and agreement with B2B.

For example, the first cause of action for unfair competition claims that Third Party Defendants are jointly or severally liable, or in the alternative, with B2B

17

concerning to the same transaction "described in Counterclaim Four, and questions of law and fact are common to all parties." (Id. ¶ 126.) It alleges that B2B and Third Party Defendants entered into manufacturing agreement in order to avoid payment of royalties due to Caliber by Third Party Defendants' use of the CALIBER mark and Bullet Trade Dress. (Id. ¶ 127.) It alleges that B2B and 2 Monkey engaged in wrongful conduct by entering into a manufacturing agreement and attempting to circumvent Caliber's lawful registration of the CALIBER Mark and Bullet Trade Dress for their own benefit and to Caliber's detriment. (Id. ¶ 128.) Counterclaim Four, which is referenced in Claim One of the TPC, is an unfair competition claim by Caliber against B2B claiming that B2B engaged in wrongful conduct by entering into a manufacturing agreement with 2 Monkey. (Id. ¶¶ 94, 95.) The manufacturing agreement is a key allegation to Caliber's claims against Third Party Defendants' and the settlement agreement is the basis of Caliber's claims that B2B has no authority to sub-license Caliber's trademarks. But for 2 Monkey's agreement with B2B, 2 Monkey would not be infringing on Caliber's trademarks and would not have engaged in alleged wrongful conduct. Therefore, the Court concludes that the claims in the TPC arise out of Third Party Defendants' forum-related activities in California.

### 3. Jurisdiction Must Be Reasonable

Once the plaintiff has met the first two factors, the defendant bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). For jurisdiction to be reasonable, it must comport with "fair play and substantial justice." Burger King Corp., 471 U.S. at 476.

Here, since Caliber has demonstrated purposeful direction that arises out of 2 Monkey and Lucky Shot's forum-related activities, it is Third Party Defendants'

burden to demonstrate a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Burger King, 471 U.S. at 477.

The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1352 (9th Cir. 2003).

Here, Third Party Defendants do not address and thus fails to present compelling reasons that other factors would render jurisdiction unreasonable. There is nothing in the record to suggest that it would be unfair to require Third Party Defendants to defend this action in California. Thus, the Court concludes that it has personal jurisdiction over Third Party Defendants and DENIES their motion to dismiss.

## Conclusion

Based on the above, the Court DENIES Third Party Defendants' motion to dismiss under the first-to-file rule and for lack of personal jurisdiction. The hearing set for July 27, 2018 shall be **vacated.**

IT IS SO ORDEDED.
Dated: July 24, 2018

Hon. Gonzalo P. Curiel
United States District Judge

19
Case No. 3:18-cv-00669-GPC-KSC