UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BULLETS2BANDAGES, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>CALIBER CORPORATION, an Illinois corporation,<br><br>    Defendant. | Case No. 3:18-cv-00669-GPC-MSB<br><br>**ORDER GRANTING CALIBER'S MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIMS AND THIRD-PARTY CLAIMS**<br><br>**[Dkt. No. 64.]** |
| CALIBER CORPORATION, an Illinois Corporation,<br><br>    Counterclaim-Plaintiff,<br><br>  v.<br><br>BULLETS2BANDAGES, LLC, a California limited liability company,<br><br>    Counterclaim-Defendant, | |
| CALIBER CORPORATION, an Illinois Corporation,<br><br>    Third-Party Plaintiff,<br><br>  v.<br><br>LUCKY SHOT USA LLC, a Florida Limited Liability Company; and 2 MONKEY TRADING, LLC, a Florida Limited Liability Company,<br><br>    Third-Party Defendants, | |

1

| | |
|---|---|
| LUCKY SHOT USA LLC, a Florida Limited Liability Company; and 2 MONKEY TRADING LLC, a Florida Limited Liability Company, | |
| Third- Party Counterclaim- Plaintiffs, | |
| v. | |
| CALIBER CORPORATION, an Illinois Corporation, | |
| Third Party Counterclaim- Defendant. | |

Before the Court is Defendant/Counterclaim Plaintiff/Third-Party Plaintiff/Third Party Counterclaim-Defendant Caliber Corporation's motion for leave to file an Amended Counterclaim and Third-Party Claim. (Dkt. No. 64.) Third Party Defendant/Third Party Counterclaim Plaintiff 2 Monkey Trading LLC and Plaintiff/Counterclaim-Defendant Bullets2Bandages, LLC filed an opposition. (Dkt. No. 77.) Caliber filed a reply. (Dkt. No. 84.) Based on the reasoning below, the Court GRANTS Caliber's motion for leave to file an Amended Counterclaim and Third Party Complaint.

**Background**

Plaintiff Bullets2Bandages, LLC ("B2B") and Defendant Caliber Corporation ("Caliber") are both in the business of selling bullet-shaped bottle openers. (Dkt. No. 41, Counterclaim ¶ 14; Case No. 13cv3134-CAB(BLM), Dkt. No. 1, Compl. ¶ 11.) On December 20, 2013, in Case No. 13cv3134-CAB(BLM), B2B filed a complaint against Caliber for trademark infringement of B2B's U.S. Trademark Registration No. 4,364,453 for the CALIBER mark as well as a federal unfair competition, and

2

California statutory and common law unfair competition claims. (Case No. 13cv3134-CAB(BLM), Dkt. No. 1, Compl.) In turn, Caliber filed a counterclaim against B2B for unfair competition based on B2B's wrongful use of the CALIBER mark and wrongful use of Caliber's Bullet Trade Dress[1], cancellation of the CALIBER mark[2], false or fraudulent registration, and trademark infringement and unfair competition under California law. (*Id.*, Dkt. No. 15, Caliber's Ans./Counterclaim.)

On June 9, 2014, B2B and Caliber entered into a Settlement Agreement in Case No. 13cv3134-CAB(BLM), effective April 7, 2014, where B2B assigned to Caliber all rights to the CALIBER Mark, U.S. Trademark Registration No. 4,364,453, agreed to withdraw its opposition to Caliber's registration of the Bullet Trade Dress[3] and agreed not to use the phrase "the original"[4] in connection with the sale of bullet-shaped bottle openers. (Dkt. No. 41, Counterclaim ¶ 23; *id.*, Ex. 2.) In exchange, Caliber agreed to grant B2B a worldwide, nonexclusive license to the Bullet Trade Dress and to "B2B's then-current use of the word 'Caliber'". (*Id.* ¶ 23; Dkt. No. 1, Compl. ¶ 9.)

The Complaint alleges that B2B, relying on its rights under the Settlement Agreement, manufactures products that it then sells to wholesalers, such as 2 Monkey Trading, LLC ("2 Monkey") (a/k/a Lucky Shot) who sells the products directly to consumers. (Dkt. No. 1, Compl. ¶ 11.) 2 Monkey sells B2B's products through Amazon and Etsy. (Id.) B2B learned that someone complained that 2 Monkey's products were infringing. (Id. ¶ 12.) Due to the complaints, Amazon and Etsy removed 2 Monkey's listings from their websites, barring it from engaging in any sales of B2B's products. (Id.)

---

[1] The Bullet Trade Dress Application No. 85/588,703 became U.S. Trademark Registration No. 4,630,557 on November 7, 2014. (Dkt. No. 41, Counterclaim ¶ 17.)

[2] On January 16, 2014, Caliber also filed a petition for cancellation of B2B's CALIBER mark. (Dkt. No. 41, Counterclaim ¶ 22.)

[3] On December 23, 2013, B2B filed an opposition to Caliber's application for registration of the Bullet Trade Dress with the USPTO claiming that the mark constituted matter that is functional. (Dkt. No. 41, Counterclaim ¶ 21.)

[4] Caiber also owns trademark Registration No. 4,930,487 for the mark, ORIGINAL .50 CALIBER BOTTLE OPENER. (Dkt. No. 41, Counterclaim ¶ 19.)

B2B suspected Caliber complained to Amazon and Etsy and when it contacted Caliber, it was slow to respond despite the substantial financial damage to B2B for 2 Monkey's inability to sell its products. (Id. ¶¶ 14-16.) Caliber then told B2B that it was disappointed that B2B had signed an agreement with 2 Monkey. (Id. ¶ 17.) Instead of raising an issue concerning the Settlement Agreement, it asked B2B to repudiate its agreement with 2 Monkey so that B2B and Caliber could work together to make 2 Monkey pay a higher rate. (Id.) Caliber also threatened that it would begin licensing the CALIBER Mark and Bullet Trade Dress to anyone so that the market would be flooded ultimately taking sales away from B2B and 2 Monkey. (Id. ¶ 18.)

Consequently, on April 3, 2018, B2B filed the underlying Complaint against Caliber for breach of contract, interference with existing contractual relations, interference with prospective economic advantage and unfair competition under California Business & Professions Code section 17200 *et seq*. (Dkt. No. 1, Compl.)

Meanwhile, Caliber's Counterclaim and Third-Party Complaint alleges that following the execution of the Settlement Agreement, Caliber manufactured large caliber bullet-shaped bottle openers for third parties including, 2 Monkey. (Dkt. No. 41, Counterclaim ¶ 36.) On or after April 7, 2017, Caliber told 2 Monkey that it could offer a nonexclusive license to its Bullet Trade Dress. (*Id*. at ¶ 37.) 2 Monkey then ceased purchasing product from Caliber and expressed an interest in obtaining a license for sale of products bearing the Bullet Trade Dress. *(Id.* ¶ 38.) During the remainder of 2017, 2 Monkey continued to independently purchase and/or manufacture bullet-shaped bottle openers. (*Id.* ¶ 39.) Around April 2017, 2 Monkey contracted with Triton Welding & Machine Shop located in Cocoa, Florida to cut openings in .50 caliber shell casings and contracted with Orlando Contract Packaging located in Altamonte Springs, Florida to assemble .50 caliber bottle openers. (*Id.* ¶ 40.) 2 Monkey then de-burred and polished the bottle openers, itself, and sold them to others through Lucky Shot. (*Id.*) 2 Monkey knew it needed a license to the Bullet Trade Dress and engaged in

4

negotiations with Caliber throughout 2017 and early 2018 regarding a license for the sale of large caliber bottle openers. (*Id.* ¶ 42.) On January 25, 2018, after making a requested change by 2 Monkey to the agreement, Caliber believed they had an agreement. (*Id.* ¶ 43.) But 2 Monkey delayed execution of the agreement. (*Id.* ¶ 44.) On February 23, 2018, 2 Monkey told Caliber that it would purchase products from B2B instead of Caliber. (*Id.* 45.) Because they did not enter into a license agreement, 2 Monkey's prior sales of bullet-shaped bottle openers since April 2017 were unlicensed, unauthorized and counterfeit. (*Id.* ¶ 46.)

Around February 23, 2018, 2 Monkey entered into a Manufacturing Agreement with B2B without Caliber's knowledge, and on that day, 2 Monkey placed its first order of 5,000 .50 caliber bullet-shaped bottle openers and other bullet-shaped bottle openers. (*Id.* ¶ 47.) As a result, Caliber notified Amazon and Etsy on February 23, 2018 that Lucky Shot's then-existing product was infringing its Bullet Trade Dress. (*Id.* ¶ 48.) B2B did not obtain Caliber's consent to transfer rights to the Bullet Trade Dress or CALIBER mark to 2 Monkey or Lucky Shot. (*Id.* ¶ 49.) Lucky Shot continues to list bullet-shaped bottle openers on its own website, Amazon.com and Etsy.com without a license from Caliber. (*Id.* ¶ 50.) Lucky Shot also uses the phrase "the original" without a license from Caliber. (*Id.* ¶ 51.) B2B continues to use the phrase "the original" in connection with the sale of bullet-shaped bottle openers without a license from Caliber. (*Id.* ¶ 52.) Amazon and Etsy removed specific listings of Lucky Shot to comply with their policies on sale of infringing and/or counterfeit products. (*Id.* ¶ 53.) On March 1, 2018, B2B contacted Caliber demanding that the take-down notices be withdrawn explaining that all 2 Monkey/Lucky Shot products were being manufactured by B2B as of Monday, February 26, 2018. (*Id.* ¶ 56.) In response, Caliber sought a copy of the Manufacturing Agreement that was heavily redacted but confirmed that B2B and 2 Monkey/Lucky Shot entered into a sublicense agreement. (*Id.* ¶ 60.) Moreover, invoices related to the production of bottle openers for 2 Monkey were produced

5

indicating that B2B subcontracted with Triton Welding & Machine Shop, Inc. and Orlando Contract Packaging, the same companies 2 Monkey hired directly to manufacture bottle openers from April 2017 to February 2018. (*Id.* ¶¶ 61-62.) Caliber also requested the pricing information in the Manufacturing Agreement and purchase documents that verify that B2B is the manufacturer but B2B and 2 Monkey refused. (*Id.* ¶¶ 65, 66.) Therefore, Caliber is unable to determine whether the Lucky Shot bullet-shaped bottle openers on Amazon and Etsy are counterfeit, non-infringing or produced under the settlement agreement with B2B. (*Id.* ¶ 67.)

Based on these facts, on April 27, 2018, Defendant Caliber filed its Answer and a Counterclaim against B2B for breach of contract, interference with prospective economic advantage and negligent misrepresentation, unfair competition, two counts of federal unfair competition pursuant to 15 U.S.C. § 1125(a) for the CALIBER and ORIGINAL marks, and two counts of trademark infringement of U.S. Registration No. 4,930,487 (THE ORIGINAL .50 CALIBER BOTTLE OPENER) and the U.S. Registration No. 4,364,453 (CALIBER) pursuant to 15 U.S.C. § 1114. (Dkt. No. 5.) Caliber also filed a Third-Party Complaint ("TPC") against Third Party Defendants Lucky Shot and 2 Monkey. (Id.) In the TPC, Caliber alleges eight causes of action of common law unfair competition, three counts of trademark infringement of U.S. Registration No. 4,630,557 (Bullet Design mark), U.S. Registration No. 4,364,453 (CALIBER) and U.S. Registration No. 4,930,487 (ORIGINAL .50 CALIBER BOTTLE OPENER) pursuant to 15 U.S.C. § 1114; three counts of federal unfair competition pursuant to 14 U.S.C. § 1125(a), and counterfeiting. (Dkt. No. 5 at 22-29.)

On June 8, 2018, B2B filed its Answer to Caliber's Counterclaims. (Dkt. No. 22.) On August 7, 2018, Third Party Defendants filed their Answer to the TPC and filed a Third-Party Counterclaim. On August 28, 2018, Caliber filed its answer to the Third-Party Defendants' Counterclaim. (Dkt. No. 30.)

On January 9, 2019, the Court granted Caliber's unopposed motion for leave to file an Amended Answer, Counterclaims and Third-Party Complaint due to a typographical error. (Dkt. Nos. 37, 39, 40.) On January 10, 2019, Caliber filed the operative Amended Answer, Counterclaims and Third-Party Claims. (Dkt. No. 41.) On January 24, 2019, Third Party Defendants filed an Answer to the Third-Party Complaint and Counterclaim as well as their Third Party Counterclaims against Caliber seeking a declaration that trademark registration no. 4,630,557 (Bullet Trade Dress) is invalid, cancellation of federal trademark registration No. 4,630,557 (Bullet Trade Dress), cancellation of federal trademark registration No. 4,364,453 (CALIBER mark), and cancellation of federal trademark registration No. 4,930,487 (ORIGINAL mark). (Dkt. No. 42 at 15-22.)

The deadline for the completion of fact discovery in this case was May 10, 2019 and expert discovery deadline was September 13, 2019. (Dkt. No. 35 at 2-3.) Summary judgment motions were filed by all parties on October 28, 2019 and are now fully briefed. (Dkt. Nos. 59, 68, 80, 81, 87, 89.)

On September 12, 2019, B2B and 2 Monkey entered into an Asset Purchase Agreement ("APA") where B2B sold all of its business assets related to bullet bottle openers, including the subject matter of the Settlement Agreement, which is at issue in this case, to 2 Monkey. (Dkt. No. 64-10, Ex. 6 to Ex. A.) The APA specifically provides,

> a. B2B hereby assigns, transfers, grants, conveys, and delivers to 2 Monkey, all of its business assets related to the subject matter of the Settlement Agreement free and clear of all debts, security interest, liens, charges, or other encumbrances. For example, this includes B2B's bullet bottle opener manufacturing business.
> b. The Parties hereby make this assignment retroactively effective as of April 7, 2017.

(*Id.*, APA ¶ 1.)

7

Due to the APA, on September 13, 2019, 2 Monkey filed a motion to substitute it in place of B2B, which was denied on November 1, 2019. (Dkt. Nos. 49, 65.) On October 25, 2019, Caliber sought to re-open discovery concerning the execution and content of the APA to determine its impact on the instant litigation. (Dkt. No. 59.) In its motion, Caliber stated that once discovery is complete, the parties will need to brief and argue pre-trial motions related to the APA. (Dkt. No. 57-1 at 12.) On December 9, 2019, the Magistrate Judge granted Caliber's motion to reopen discovery solely into the APA with discovery to be completed by January 24, 2010. (Dkt. No. 90 at 6.) The Magistrate Judge noted that because the APA was executed weeks after the close of fact discovery, and the APA creates new legal relationships between the parties with respect with the Bullet Trade Dress creating new causes of action, the Magistrate Judge found good cause to reopen discovery. (*Id.* at 6.)

According to Caliber, the APA complicates the issues in the case because "(1) it purports to change the relationship of the parties and affect nearly every aspect of this case; (2) it creates new claims of trademark infringement and unfair competition against B2B by retroactively removing B2B's trademark license and granting it to 2 Monkey; (3) it creates new breach of contract claims against Third-Party Defendants by allegedly transferring the license to 2 Monkey; and (4) it creates new interference with prospective economic advantage claims against Third-Party Defendants." (Dkt. No. 64-1 at 4.)

Based on new claims raised by the APA, Caliber now seeks leave to file an amended counterclaim pursuant to Federal Rules of Civil Procedure ("Rule") 15 and 16 to add claims for federal unfair competition and trademark infringement of U.S. Reg. No. 4,630,557 (Bullet Trade Dress) against B2B and an amended Third-Party Complaint to add causes of action for interference with prospective economic advantage and breach of contract against 2 Monkey. (Dkt. 64-3, Ex. A, Proposed

Second Am. Answer, Counterclaim and Third-Party Claims.) B2B and 2 Monkey oppose the motion. (Dkt. No. 77.) Caliber filed a reply. (Dkt. No. 84.)

A.  **Federal Rule of Civil Procedure 16**

Once a district court has established a deadline for amended pleadings, and that deadline has passed, Rule 16 applies. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-608 (9th Cir. 1992). In this case, the deadline for a party to file a motion for leave to amend the pleadings expired on December 10, 2018. (Dkt. No. 35 at 2.)

Rule 16 provides that a pretrial scheduling order can only be modified "upon a showing of good cause." Fed. R. Civ. P. 16(b). "Good cause" focuses on the diligence of the party seeking an amendment. *Johnson*, 975 F.2d at 609. The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* In general, the focus of the diligence inquiry is on the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. *See Zivkovic v. S. Cal. Edison Corp.,* 302 F.3d 1080, 1087-88 (9th Cir. 2002). Prejudice to the non-moving party, though not required under FRCP 16(b), can supply additional reasons to deny a motion. *Coleman*, 232 F.3d at 1295. Rule 16's good cause standard is more stringent that the liberal amendment standard under Rule 15. *AmerisourceBergen Corp. v. Dialysist W., Inc*., 465 F.3d 946, 952 (9th Cir. 2006).

Caliber argues that it timely and diligently filed its motion for leave to amend. The APA was signed on September 12, 2019 and within 22 days after receiving notice of the APA, it attempted to contact 2 Monkey's counsel but received no response. As a result, Caliber filed its motion for leave to amend 43 days after having received notice of the execution of the APA. The Court finds that good cause has been satisfied as the APA was only recently entered into on September 12, 2019, and Caliber, after unsuccessfully attempting to contact 2 Monkey, filed its motion on October 21, 2019.

9

2 Monkey does not challenge Caliber's diligence but argues that amendment may not be used to prevent the efficient resolution of a case and amendments raised at the "eleventh" hour after discovery is complete and motions for summary judgment are pending before the court may be denied citing *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (district court did not abuse its discretion denying leave to amend to add claim when discovery was "virtually complete" and a "motion for summary judgment was pending before the court.") *Roberts* does not provide support because, unlike the present case, it did not involve actions taken by a non-moving party, after discovery had been completed, which altered the legal relationship amongst the existing parties. B2B and 2 Monkey, only recently and after fact discovery had closed, entered into an APA, which purports to grant rights to the Settlement Agreement, the key agreement in this case, retroactive to April 17, 2017. Caliber has easily demonstrated good cause to modify the scheduling order.

## B. Federal Rule of Civil Procedure 15

The standard for a motion for leave to file a counterclaim is the same as those governing a motion for leave to amend a pleading under Rule 15(a). *Magnesystems, Inc. v. Nikken, Inc*., 933 F. Supp. 944, 947 (C.D. Cal. 1996). Federal Rule of Civil Procedure ("Rule") 15(a) provides that leave to amend "shall be freely given when justice so requires" and the standard is applied liberally. *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a). Granting leave to amend rests in the sound discretion of the trial court. *See Internat'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines,* 761 F.2d 1386, 1390 (9th Cir. 1985). This discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with "extreme liberality." *DCD Programs Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987).

Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. *Genentech, Inc. v. Abbott*

*Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989). In assessing the propriety of an amendment, courts consider several factors: (1) undue delay, (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman,* 371 U.S. at 182; *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). These factors are not equally weighted; the possibility of delay alone, for instance, cannot justify denial of leave to amend, *DCD Programs*, 833 F.2d at 186, but when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).

On the amendment to the Third-Party Complaint seeking to add a breach of contract and a claim for interference with prospective economic advantage against 2 Monkey, 2 Monkey and B2B maintain that the additional claims have no bearing on the underlying case because the APA did not occur until September 2019. They further argue that the acts that give rise to this claim do not arise from the same operative facts as the original pleadings and 2 Monkey would be highly prejudiced by adding an unrelated claim at this point of this proceeding. Finally, they contend that the breach of contract claim is without merit and adding the claim would be futile.

The Court disagrees. While 2 Monkey and B2B argue that the APA did not occur until September 2019, long after the acts giving rise to the underlying pleadings, the APA makes the assignment of business assets retroactive to April 7, 2017. April 7, 2017 is a critical date in the underlying pleadings as that is the date when Caliber was given permission to license the Bullet Trade Dress and CALIBER mark under the terms of the Settlement Agreement. (Dkt. No. 49-3, Keener Decl., Ex. A, Sett. Agreement ¶¶ 2(c) and 4(b) ("Caliber may not license or assign the Bullet trade Dress [or the CALIBER Mark] . . .for a period of three years, with the three-year term beginning on the Effective Date [April 7, 2014].") Sometime on or after April 7, 2017, Caliber offered a non-exclusive license to the Bullet Trade Dress to 2 Monkey and they

11

were close to finalizing an agreement on January 25, 2018, when Caliber was informed by 2 Monkey, on February 23, 2018, that it would be purchasing products from B2B instead of Caliber under a Manufacturing Agreement. (Dkt. No. 41, Am. Ans. Counterclaim ¶¶ 37-47.) Because of the Manufacturing Agreement between B2B and 2 Monkey, Caliber notified Amazon and Etsy that Lucky Shot's products were infringing its Bullet Trade Dress. (Id. ¶ 48.) That conduct was the basis for B2B's filing of the underlying Complaint. (Dkt. No. 1, Compl.) Because the APA is retroactive to April 7, 2017, the proposed claims arise from the same operative facts as the original pleadings.

The proposed breach of contract claim also arises out of the terms of the Settlement Agreement which is the basis of the underlying claims. Since 2 Monkey allegedly now stands in the place of B2B, the same breach of contract claims alleged against B2B may be brought against 2 Monkey.[5] Moreover, the claim for interference with prospective economic advantage arises from the settlement negotiations on the underlying Complaint and Counterclaim between B2B and Caliber shortly before the APA was signed. These claims are clearly related to the underlying facts of the case and any contrary suggestion is without merit.

On the amendment to the counterclaim alleging federal unfair competition as it relates to the Bullet Trade Dress and trademark infringement as to the CALIBER mark against B2B, 2 Monkey and B2B argue that these claims would be futile if the motion for summary judgment seeking cancellation of the '557 and '453 registrations is granted at the hearing next month. B2B and 2 Monkey's argument on futility is based on a hypothetical that may or may not occur and is not a basis to deny a motion for leave to amend.

---

[5] The Court questions whether Caliber will dismiss the related breach of contract claim in the counterclaim alleged against B2B for similar conduct. (*See* Dkt. No. 41, Counterclaim ¶¶ 68-78.)

12

Finally, Caliber notes that 2 Monkey is relying on the APA to assert it had a valid license to the Bullet Trade Dress and CALIBER mark. (*See e.g.,* Dkt. No. 68-3 at 14.) It would be unfair to allow 2 Monkey to use the APA as a defense to the claims against it without allowing Caliber to complete discovery on the APA and present argument to challenge 2 Monkey's position. Accordingly, the Court GRANTS Caliber's motion for leave to file an amended Counterclaim and Third-Party Complaint.

**Conclusion**

Based on the above, the Court GRANTS Caliber's motion for leave to file an amended Counterclaim and Third-Party Complaint. Caliber shall file the proposed amended Counterclaim and amended Third-Party Complaint within **3 days** of the Court's order. The hearing set for December 20, 2019 shall be **vacated.**

Because the APA may change the legal positions of B2B and 2 Monkey as it relates to the Settlement Agreement, the Court DENIES Caliber's motion for summary judgment, (Dkt. No. 59), and B2B/2 Monkey/Lucky Shot's motion for summary judgment, (Dkt. Nos. 68, 69, 70) as MOOT and subject to refiling once the limited discovery on the APA has been completed.[6]

IT IS SO ORDERED.

Dated: December 18, 2019

Hon. Gonzalo P. Curiel
United States District Judge

---

[6] When the parties refile their motions for summary judgment, they **must** specify the pleading and cause of action they seek relief on. (*See e.g.,* Dkt. No. 59 (failing to specify which pleadings it seeks summary judgment on).)

13

Case No. 3:18-cv-00669-GPC-MSB